**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 10-81634-CIV-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA *ex rel.* TIFFANY
BUMBURY, STANLEY BERNSTEIN, and JAMIE
JONES CAMUCCIO,

       Plaintiffs,

vs.

MED-CARE DIABETIC & MEDICAL SUPPLIES,
INC., a Florida corporation, *et al.*,

       Defendants.

_____/


**DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**
**AND SUPPORTING MEMORANDUM OF LAW**

Defendants Med-Care Diabetic & Medical Supplies, Inc. ("Med-Care"), East End Associates, Inc. ("East End"), Daniel M. Porush, Lawrence P. Silverman, Jordan Shamah, and Steven Silverman (collectively "Defendants") move to dismiss with prejudice the Third Amended Complaint ("Complaint") (Docket Entry "Doc." 98) of Relator Tiffany Bumbury ("Bumbury") and putative Relators Stanley Bernstein ("Bernstein") and Jamie Jones Camuccio ("Camuccio," and collectively with Bumbury and Bernstein, "Relators") for failing to state a claim for relief or plead their claims with particularity as mandated by Federal Rules of Civil Procedure 9(b) and Rule 12(b)(6).[1]  Moreover, Defendants oppose any attempt to include Bernstein and Camuccio as named plaintiffs in the Complaint as contrary to the jurisdictional first-to-file bar of 31 U.S.C. § 3730(b)(5), and the public disclosure provision of 31 U.S.C. § 3730(e)(4).

Bumbury's latest amendment to her complaint is not the first time that she has attempted to state a claim against Defendants based on allegations of "a long-running and multifaceted Medicare DME fraud scheme perpetrated by the Defendants for the purpose of submitting false claims" to Medicare.  It should, however, be her last.

On June 23, 2014, this Court held that Bumbury could not state a claim against Defendants because she failed to meet the minimum requirements of Rules 9(b) and 12(b)(6). The Court, therefore, granted Defendants' motion to dismiss Bumbury's claims, but granted her leave to replead.  Fatal to Bumbury's previous claims was her lack of "personal" and "direct" knowledge of the false claims allegedly presented by Defendants to Medicare for payment.

Bumbury now seeks to breathe new life into her claims by not only amending the Complaint to include allegations regarding her "investigation" of the so-called fraud, as the

---

[1]   For the convenience of the Court, Defendants will cite filings in this action by reference to their entry number on the docket.

primary basis of her knowledge, but also introducing putative Relators Bernstein and Camuccio to fill in the gaps where she cannot do so herself.  These efforts are insufficient to save Bumbury's claims against Defendants.  For the same reasons that this Court correctly dismissed Bumbury's previous claims against Defendants, it should do so again.

## BACKGROUND[2]

### A.  Dismissal of the Second Amended Complaint

On June 23, 2014, this Court dismissed the Second Amended Complaint finding that Bumbury lacked the necessary "personal knowledge to assert fraud with particularity," and, therefore, the Complaint had not alleged with particularity any actual false or fraudulent claims under the False Claims Act.  (Doc. 95 at 3).  To this end, the Court found "Bumbury's claim to have 'personal knowledge' of the alleged violations . . . not plausible" because, among other reasons, the allegations in the Complaint were "contradicted by her very brief employment with East End in 2010" and Bumbury "claim[ed] no other source of information, except from a [publicly available] 2013 Congressional investigation and hearing."  *Id.* at 4.  The Court found that Bumbury "attempt[ed] to bootstrap her three months of experience to show her 'personal knowledge' of alleged violations by the Defendants starting in 2004 and continuing into 2014" despite failing to allege "any firsthand knowledge of Defendants' billing practices."  *Id.* at 8.

In addition, the Court found that Bumbury failed to sufficiently allege fraudulent acts by omitting "the who, what, where, when, and how of fraudulent submissions to the government" and "fail[ing] to acknowledge all of the circumstances in which seemingly 'unsolicited' contact is statutorily permitted with Medicare beneficiaries."  *Id.* at 9.  The Court found that Bumbury failed to state a claim because "the pleading consist[ed] merely of a handful of thin facts

---

[2]    Defendants assume that the Court is familiar with the facts of this case and hereby incorporate the statement of facts set forth in *Defendants' Motion to Dismiss Second Amended Complaint and Supporting Memorandum of Law*, dated March 21, 2014.  *See* Doc. 66 at 2-5.

regarding Bumbury's employment and her recollection of the statements she made to customers and that customers purportedly made to her during her brief tenure as a telemarketer." *Id*. at 14.

Finally, the Court barred allegations "derived from the public disclosure" of certain facts disclosed during a congressional hearing. *Id.* at 15. The Court granted twenty days to amend.

### B. The Third Amended Complaint

On July 24, 2014, Bumbury filed the Third Amended Complaint. Though substantially revised and spanning 69 pages, it contains minimal new allegations. Most interesting is the addition of purported new relators, Bernstein and Camuccio. Neither Bernstein nor Camuccio filed a motion to intervene in this action. Bernstein and Camuccio worked at Med-Care in Boca Raton, Florida, from May 2010 through April 2014, and January 2012 through February 2014, respectively. *Id.* Their former positions at Med-Care were similar to Bumbury's former position at East End. Neither Bernstein's nor Camuccio's former job responsibilities involved filling orders, billing, or handling payments or reimbursements. Rather, both of their former jobs at Med-Care are described as essentially the same as Bumbury's former job at East End, consisting solely of "telemarketing."

## ARGUMENT

### I.   Governing Standards of Law

On a Rule 12(b)(6) motion, the allegations of the complaint are accepted as true and plaintiffs are entitled to all reasonable inferences that can be drawn in their favor. *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1186 (S.D. Fla. 2013). Nevertheless, to prevail on a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is not required to accept as true "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In addition, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed R. Civ. P. 9(b). Particularity means that a "plaintiff must plead 'facts as to time, place, and substance . . . of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). Courts "evaluate whether the allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b) on a case-by-case basis." *Id.* at 1358. A complaint satisfies Rule 9(b) if it sets forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

## II.      Bumbury Cannot Use Intervention to Cure Her Failure to State a Claim

Based on the lack of new allegations in the Complaint, Bumbury tacitly acknowledges this Court's finding that she lacks the knowledge required to assert fraud with particularity. Rather than admit this head-on, Relators' counsel names new purported plaintiffs with alleged "direct and personal knowledge" of the same violations alleged by Bumbury. As contrary to the first-to-file and the public disclosure bars of the False Claims Act, this should not be allowed.

"When a person brings [a *qui tam*] action, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5); *U.S. ex rel. Bane v. Life Care Diagnostics*, No. 8:06-cv-467, 2008 WL 4853599, at *3 (M.D. Fla. Nov. 10, 2008). In general, this bars private party intervention in a pending *qui*

*tam* suit.  *See U.S. ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999) (noting that this bar is "exception-free").

The Eleventh Circuit has observed that while "the FCA permits private parties to file *qui tam* actions," the first-to-file bar "specifically limits the circumstances in which they can do so." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1260 (11th Cir. 2008).  As a result, "once one suit has been filed by a relator or by the government, all other suits against the same defendant based on the same kind of conduct would be barred" pursuant to 31 U.S.C. § 3730(b)(5).  *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 (11th Cir. 1994); *see also U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (noting that "first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims" asserted by "opportunistic successive plaintiffs").  "By drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in qui tam suits." *LaCorte*, 185 F.3d at 191.

Although no motion to intervene was filed in this action, the addition of Bernstein and Camuccio as plaintiffs is a thinly veiled attempt to intervene in violation of the statutory prohibition against private party intervention under Section 3730(b)(5).  Courts interpret "intervene" within the context of Section 3730(b)(5) broadly to bar joinder of new relators through the amendment of a pleading.  *See, e.g., U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2006 WL 1102397, at *6 (M.D. Tenn. Apr. 25, 2006) (holding that "Section 3730(b)(5) strictly forbids private parties . . . from being added as additional party relators with claims based on the same underlying facts ('intervening') *after* a qui tam action has been filed and the government has already been made aware of the essential facts of the alleged fraud"); *U.S. ex rel. Manion v. St. Luke's Regional Med. Ctr., Ltd.*, No. 06-498, 2008 WL 906022, at *6 (D. Idaho Mar. 31, 2008) (upholding the first-to-file rule "because [the new relator] ha[d] not brought a

separate action, but ha[d] only been added" to the current action); *U.S. ex rel. Wilson v. Bristol Myers Squibb, Inc.*, No. 06-cv-12195, 2011 WL 2462469, at *8 (D. Mass. June 16, 2011) (barring amendment under Rule 15 in order to add new relators because the FCA "substantially narrows the more permissive framework of the Federal Rules" whereby "intervention by any one [*sic*] other than the government is simply barred").

Bernstein and Camuccio's claims are the same as Bumbury's claims, both in nature and scope. The only difference between Bumbury, on the one hand, and Bernstein and Camuccio, on the other, is that Bumbury was an East End employee whereas Bernstein and Camuccio were Med-Care employees. The difference is meaningless. Bumbury's claims were asserted against Med-Care over three-and-one-half years ago, and the material elements underlying her claims are the same as the material elements underlying Bernstein and Camuccio's claims. The first-to-file rule is designed to prevent such opportunistic "piggyback" claims. *Lujan*, 243 F.3d at 1189.

Moreover, neither Bernstein nor Camuccio are the "original source" of the allegations of the Complaint, which were publicly disclosed when Bumbury's case against the Defendants was unsealed in February 2014. This Court has recognized that the public disclosure bar deprives courts of jurisdiction where "the allegations of transactions disclosed in the public domain, while not describing with particularity the specific fraud alleged in the complaint, are otherwise sufficient to alert the Government to the likelihood of fraud in the manner alleged by the relator." Doc. 95 at 14-15 (quoting *U.S. ex rel. Osheroff v. Humana, Inc.*, No. 10-24486-cv-SCOLA, 2012 WL 4479072 at *4 (S. D. Fla. Sept. 28, 2012)). Bumbury's claims put the government on notice of the essential facts of the alleged fraud in 2010. Any argument that those claims were not previously, publicly disclosed is untenable, given that the only specific examples of alleged fraud in the Complaint were also included in the previous, publicly-filed complaint. *Compare* Doc. 48 at ¶¶ 27, 68, *with* Doc. 98 at ¶¶ 20-21, 128.

### III.     The Complaint Does Not Overcome Its Previous Inadequacies

The fundamental problem with the previously filed complaint was that Bumbury lacked direct and personal knowledge about the Defendants' billing practices.  Nothing alleged in this Complaint fixes that problem.  The Relators have no personal knowledge of billing practices. Each relator worked as a self-proclaimed telemarketer with finite responsibilities limited to calling Med-Care customers.  *See* Doc. 98 at ¶¶ 18-19.  As this Court recognized, "Bumbury's job did not concern filling orders, billing, or payments, [and] it is just as likely that she would not have been privy to any safeguards Defendants had in place to confirm that contact with Medicare beneficiaries was statutorily permissible."  Doc. 95 at 6.  Bernstein and Camuccio worked for Med-Care in the same capacity as Bumbury worked for East End, and similarly were not exposed to Med-Care's billing department or related practices.  Doc. 98 at ¶¶ 53-54.  Nor were the Relators involved with filling orders or payments submitted to Medicare.  *Id.* ¶¶ 52-54.

Furthermore, the Complaint does not allege any additional details regarding Defendants' billing practices.   Bumbury concedes that she has no personal knowledge of any of the Defendants' billing practices by admitting that "Med-Care operated a . . . billing office . . . in Florida," where she never worked.  Doc. 98 at ¶ 82.  East End is not alleged to be a billing entity. Bernstein and Camuccio baldly state that Med-Care's orders would "be billed to Medicare" without any description of how, which orders were included, when they were billed, or whether they were paid.  *Id.* ¶¶ 44-45, 131.   They admit that they had limited knowledge of, and interaction with, the billing department.  *Id.* ¶ 135.   Any inference that this was purposefully done to conceal a fraud is unreasonable, and of no avail to the Relators.

### A.  The Complaint Does Not Satisfy the Pleading Standard of Rule 9(b)

The Eleventh Circuit strictly interprets the pleading requirements of Rule 9(b) in False Claim Act cases.  *See, e.g.*, *U.S. ex rel. Shurick v. Boeing Co.*, 330 Fed. App'x 781, 783 (11th

Cir. 2009). Indeed, the "Eleventh Circuit has recognized that . . . these requirements of Rule 9(b) . . . are necessary to prevent '[s]peculative suits against innocent actors for fraud' and charges of guilt by association." *U.S. ex rel. Keeler v. Eisai, Inc.*, Nos. 13-10973, 13-11949, 2014 WL 2595592, at *9 (11th Cir. June 11, 2014) (quoting *Clausen*, 290 F.3d at 1308).

The lack of particularity in identifying any specific claim submitted or presented to the government mandates dismissal of a relator's complaint. *See Clausen*, 290 F.3d at 1313-14 (dismissing case where relator "merely alleged that the[] [defendant's] practices resulted in the submission of false claims for payment to the United States" without alleging amounts of charges, actual dates, policies about billing or even second-hand information about billing practices); *accord: U.S. ex rel. Seal 1 v. Lockheed Martin Corp*, 429 Fed. App'x 818, 820 (11th Cir. 2011); *Hopper v. Solvay Pharmas., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) ("Improper practices standing alone are insufficient to state a claim under either § 3729(a)(1)[A] or [B] absent allegations that a specific fraudulent claim was in fact submitted to the government"); *Shurick*, 330 Fed. App'x at 784; *U.S. ex rel. Butler v. Magellan Health Servs., Inc.*, 74 F. Supp. 2d 1201, 1216 (M.D. Fla. 1999) (dismissing amended complaint for failing to mention "but one specific person, time, or incident"); *U.S. ex rel. Butler v. Magellan Health Servs., Inc.*, 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000) ("*Butler II*") (dismissing second amended complaint where "Plaintiff plead[ed] generally and never reference[d] or produce[d] any such documents which would support false claims to the government," made no allegations regarding the time or place of the false claims, pleaded "no facts relating to the content of any false claims or the manner in which they were submitted," and failed "to plead what the defendants received specifically as a result of the alleged fraud"); *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross & Blue Shield of Ga., Inc.*, 755 F. Supp. 1055, 1057 (S.D. Ga. 1990).

Even where evidence of fraudulent billing is submitted with a relator's complaint, such

evidence is insufficient unless it "state[s] what the actual charges should have been" in contrast to what the defendants allegedly submitted to the government. *U.S. ex rel. Carroll v. JFK Med. Ctr., No. 01-8158*, 2002 WL 31941007, at *4 (S.D. Fla. Nov. 15, 2002); *Mitchell v. Beverly Enters., Inc.*, 248 Fed App'x 73, 75 (11th Cir. 2007) (dismissing complaint that "provided specific facts only about . . . billing logs, not the actual claims presented to Medicare" and "failed to assert any specific facts regarding the actual submission of the claim to Medicare").

### (i)        The Complaint Lacks Particularity

In the Complaint, Relators studiously ignore the shortcomings that the Court identified in its Order.  The recycled allegations in the Complaint still fail under Rule 9(b)'s particularity requirement, and the new allegations do nothing to save the Complaint from a similar fate.

### a.  Alleged Misrepresentations

The vague list of "misrepresentations" that Bumbury provided in the Second Amended Complaint appears, in virtually identical form, in the Complaint.  *See* Doc. 95 at 5; Doc. 98 at ¶ 76.  Bumbury incorporates no new supporting facts, but merely adds conclusory statements regarding alleged directions from her supervisors, telemarketing techniques and sales quotas. *See id.* ¶¶ 77-81.  No details regarding the "nature and specifics of the scheme" are ever provided.  *Id.* ¶ 82.  The allegations regarding Bernstein and Camuccio fail to correct this deficiency because they do not provide sufficient detail regarding the alleged misrepresentations. *See id.* ¶¶ 87; 104.  The lists of "false representations" provided by Bernstein and Camuccio are almost identical to those alleged by Bumbury.  *Compare id.* ¶ 46, *with* ¶¶ 87, 104.

Furthermore, Bernstein and Camuccio, though prior Med-Care employees, do not provide any detail regarding alleged instructions received from certain Defendants in Boca Raton.[3]

---

[3]    It is apparent that Bumbury added Bernstein and Camuccio to remedy her lack of personal knowledge or familiarity with Med-Care or its Boca Raton facility.  However, the personal knowledge of Bumbury's original allegations that Bernstein and Camuccio can offer is similarly limited by their employment as so-called

Although Bernstein alleges that he attended meetings held by Defendants Daniel Porush and Jordan Shamah, he describes nothing more than a staff meeting, with no relation whatsoever to an alleged fraud, false claims, or billing and payments.  *See* Doc. 98 at ¶¶ 94-95.  Camuccio does not claim to have even been present during these "meetings" but rather is allegedly "aware that Defendant Danny Porush broadcast his sales meetings to Med-Care's 'New York call center.'"  *Id.* ¶ 110.  The Complaint does not allege any connection between these meetings, the purported fraud, and the submission of false claims.[4]

### b.  Allegations of Telemarketers' Scripts

The bare references to "scripts" used by telemarketers fare no better than Relators' allegations about the misrepresentations.  *See* Doc. 98, Exs. 4, 8, 9.  Although four alleged "scripts" are attached to the Complaint, Bumbury still does not "identify which statements from the purported script[s] were purportedly false."  *See* Doc. 95 at 5; Doc. 98 at ¶ 81.

The allegations from Bernstein and Camuccio regarding the supporting exhibits do not fill in the holes identified by the Court.  Terms within Exhibit 8 such as, "no cost product" and "Christian HealthCare Network," are emphasized, without further explanation, so as to suggest that the script contains false information.  *See* Doc. 98 at ¶ 88.  No purportedly false statements are identified with respect to Exhibit 9.  *Id.*  Camuccio makes no allegations of false statements contained in the purported scripts either. *See id.* ¶ 103.  Although Camuccio alleges that she was "encouraged to make false representations," no scripts or notes memorializing such

---

telemarketers.  Neither Bernstein nor Camuccio had any connection with Med-Care's managerial decisions or internal processes for filling orders, billing, or payments to Medicare.

[4]    Although Bernstein and Camuccio allege that they have "personal knowledge" that Med-Care purportedly purchased Medicare beneficiary referrals and "leads," used "online website promotions" for contact information on potential DME customers, and received customer complaints with respect to Med-Care's services, these allegations have no bearing on whether Med-Care actually *submitted* fraudulent claims to the government or *actually caused* the Government to pay such claims.  Doc. 98 at ¶¶ 91-93; 106-08.  As such, any alleged personal knowledge does not bear on the court's analysis under Sections 3729(a)(1)(A) or (B).  *See Klusmeier v. Bell Const., Inc.*, 469 Fed. App'x 718, 721-22 (11th Cir. 2012) (knowledge of purported contract violations deemed irrelevant to whether contractor submitted fraudulent claims related to those contract violations).

representations are provided.  *Id.* ¶ 104.  None of these exhibits contain the name of the telemarketer who used them, when they were used, or the respective Defendant to which the exhibits relate.  *See id.*  None of the scripts or notes contain information related to Defendants' procedures for filling orders, billing or payments.  *Id.*

### c.  No Connection between Defendants and Alleged Fraud

The Complaint still fails to identify a "particular meeting, conversation, email, directive, or other communication with Bumbury or anyone else about the so-called fraud."  Doc. 95 at 5. The Complaint reattaches emails between certain Defendants discussing expenses, which were submitted as Exhibit 14 to the Second Amended Complaint and found to be insufficient evidence of an alleged conspiracy.  *See* Doc. 98, Ex. 10.  The only new email submitted with the Complaint, an internal Med-Care email, describes no connection between Defendants and the alleged fraud.  *See id.*, Ex. 17.  Nor do the allegations of Bernstein and Camuccio help. Bernstein states that Med-Care was audited by Medicare and private insurance companies with respect to "supporting documentation for claims," but the Complaint submits no audit reports or order forms relating to such audits.  *See id.* at ¶ 95.  Furthermore, even though Bernstein and Camuccio claim that a "mistake in billing" occurred, these allegations do not identify who made the mistake, when exactly it was made, what was the nature of the mistake, whether it was intentional, or how the mistake was ultimately fixed, other than to allege that the mistake only led to a 2-3 month "freeze."  *Id.* ¶¶ 96, 111.

### d.  Relator Investigation — Trash Pulls

As a result of Relators' counsel's "trash pulls," the Complaint attaches nine new exhibits. None of these, however, provide the Court with additional information regarding the billing or payment practices of Med-Care or any other defendant, let alone billing or payment practices about which Relators had firsthand and direct knowledge.  *See, e.g.*, Doc. 98, Ex. 1 (CMS data

included in ¶ 68 of Second Amended Complaint); *id.*, Ex. 4 (alleged telemarketing script); *id.*, Ex. 7 (alleged training meeting agenda); *id.*, Ex. 8 (alleged telemarketing script); *id.*, Ex. 9 (alleged telemarketing script); *id.*, Ex. 11 (Med-Care quality control form); *id.*, Ex. 12 (handwritten post-it notes); *id.*, Ex. 16 (untitled document discussing Med-Care services); *id.*, Ex. 17 (2014 internal email from Med-Care general counsel, unrelated to billing or payment practices). All other recycled exhibits still provide an insufficient factual basis to support the allegation that any one Defendant submitted false claims to Medicare.

### e. <u>Relator Investigation — Employee and Beneficiary Interviews</u>

Although the Relators attempt to strengthen their claims with additional allegations pertaining to interviews of Med-Care employees and Medicare beneficiaries, the Complaint lists the same "examples" previously provided, which this court found insufficient to satisfy Rule 9(b). *See* Doc. 95 at 10. The "examples" provided in the Complaint are substantively *identical* to the examples provided in the Second Amended Complaint. *Compare* Doc. 48 at ¶¶ 68(a)-(q), *with* Doc. 98 at ¶¶ 128(a)-(q). This Court previously ruled these allegations insufficient because Bumbury did "not foreclose the existence of a statutorily permissible explanation" for "telephone calls she or a customer believed were 'unsolicited.'" The same is true of the amended allegations. The Complaint still fails to specifically show that the statutory exceptions did not apply to any of the "examples." *Compare* Doc. 48 at ¶¶ 27, 68, *with* Doc. 98 at ¶¶ 20-21, 128. For example, nowhere do the Relators allege that, during their interviews with beneficiaries, counsel learned that Med-Care did not have written permission to contact the beneficiary or a preexisting relationship that was lawfully established. Relators simply allege that "Med-Care generally did not have" such permission. *Id.*, ¶ 20. The Court has already ruled this level of pleading insufficient to allege a violation of Medicare solicitation rules.

Similarly, the Complaint provides no new information regarding Defendants' alleged

fraudulent conduct directed at physicians,[5] and the Relators still provide "[n]o bills to Medicare of payments from Medicare for all the claims alleged in the [Third Amended] Complaint."  Doc. 95 at 11.   Without any new allegations apart from the conclusory characterization of "solicitation," the "data" provided in the Complaint still fail to "identify which Defendant performed a supposedly prohibited act, do not state when the acts occurred other than over a one- or two-year time frame, and do not fully allege that the acts were not permissible under the Medicare statutes as would render the claims false."  *See* Doc. 98. ¶¶ 128(a)-(q); Doc. 95 at 6-7.

### B.  The Complaint Fails to Provide Any Indicia of Reliability

Although the requirements of Rule 9(b) can be satisfied if a complaint has indicia of reliability that false claims were actually submitted to the government, such allegations must be "grounded in first-hand knowledge that explain[s] why [a] relator believe[s] a specific defendant submitted false or fraudulent claims to the government."  *U.S. ex rel. Mastej v. Health Mgmt. Assoc., Inc.*, 869 F. Supp. 2d 1336, 1344 (M.D. Fla. 2012) (dismissing complaint because relator's role as prior CEO did not provide knowledge of defendant's billing practices with sufficient indicia of reliability).  Anything less fails.

Where relators are "[r]emoved from the billing process . . . and referral practices of the accused [defendants], relator[s] lack[] the indicia of reliability that might otherwise excuse [a] failure to identify specific false claims or certifications."  *U.S. v. All Children's Health Sys., Inc.*, No. 8:11-cv-1687, 2013 WL 1651811, at *4 (M.D. Fla. Apr. 16, 2013) (finding no indicia of reliability because relator "did not even work for the same company that is alleged to have presented false claims"); *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir.

---

[5]    Plaintiffs simply moved the location of the section which purports to describe such conduct to its own section within the Third Amended Complaint, and resubmitted remittance notifications as Exhibit 18 despite the Court's finding that such notifications "do not show that Med-Care submitted specific false claims to Medicare."  *Compare* Doc. 48 at ¶ 48, *with* Doc. 98 at ¶ 129; *see* Doc. 95 at 11.

2010) (finding no indicia of reliability where relator had no "direct knowledge of the defendants' billing and patient records" and "failed to provide any specific details regarding either the dates on or the frequency with which the defendants submitted false claims").   To this end, any personal knowledge alleged by a relator must be relevant to the submission of false claims, and not simply an alleged illegal or fraudulent scheme.  *See Klusmeier*, 469 Fed. App'x at 721-22.

The weight of authority within the Eleventh Circuit also requires dismissal of a *qui tam* complaint asserted by a relator or relators without personal knowledge of a defendant's billing practices.  *See, e.g.*, *Hopper*, 588 F.3d at 1326 (dismissing complaint where relators, who were sales representatives, "[did] not allege personal knowledge of the billing practices"); *U.S. ex rel. Feingold v. Palmetto Gov't Benefits Administrators*, 447 F. Supp. 2d 1187, 1195 (S.D. Fla. 2007) (dismissing complaint for lack of indicia of reliability despite relator's argument that "he embarked upon an investigation by which he uncovered [defendant's] fraudulent scheme"); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013-14 (11th Cir. 2005) (finding no indicia of reliability where relator was unaware of billing practices); *Barys ex rel. v. Vitas Healthcare Corp.*, No. 04-21431, 2007 WL 2310862, at *4 (S.D. Fla. July 25, 2007) (dismissing complaint because plaintiffs presented "nothing to support the contention that the claims submitted were actually fraudulent").

In sum, Relators must plead firsthand information about the defendants' internal billing practices, implementation of fraudulent billing schemes, or, at least, knowledge of the defendants' submission of false claims to satisfy Rule 9(b).  *See Atkins*, 470 F.3d at 1358-59 (dismissing complaint where relator did "not profess to have firsthand knowledge of the defendants' submission of false claims, and allegations were based on "rumors from staff and obser[vation] of records of what [relator] believed to be . . . shoddy medical and business practices"); *U.S. ex rel. Boros v. Health Mgmt. Assoc., Inc.*, No.10-10013, 2012 WL 5304172, at

*3 (S.D. Fla. Oct. 25, 2012) (dismissing complaint where "relators lack[ed] firsthand knowledge" and failed "to identify any details about Defendants' alleged submission of a false claim to the government or the government's payment of that claim").

### a.   Relator Investigation — Trash Pulls

The Complaint seeks to answer the Court's inquiry regarding the sufficiency of Bumbury's initial investigation by explaining that the Relator Investigation, in part, consisted of trash pulls from public dumpsters behind Med-Care's facility, which allegedly began in 2010. Regardless of when counsel began rummaging in the dumpster, anything pulled from the trash has no connection to Bumbury's brief employment at East End, nor does the Complaint explain how this trash relates to Bernstein and Camuccio's former employment at Med-Care.

While four new exhibits demonstrate the alleged telemarketing scripts used by "Med-Care employees" or notes taken during telemarketing calls, *see* Exs. 4, 8, 9, 12, none of them allegedly belonged to the Relators. Moreover, the Relators do not allege personal familiarity or knowledge of the scripts. Similarly, the Complaint submits a general 'training agenda' for Med-Care employees, which the Relators do not allege that they used during the course of their employment. It is submitted with no date or identifying information, containing hand-written notes from an unidentified person, and does not discuss any of the Defendants' billing practices. *See* Doc. 98, Ex. 7. The Complaint also submits an untitled and undated document, coined as a "flyer," which appears to offer Med-Care services, yet does not discuss or show false submissions to the government or the actual payment of such claims by the government.[6]  *See id.*, Ex. 16.  The remaining new exhibits submitted with this Complaint provide no additional information reflecting Relators' firsthand knowledge of internal billing practices or the

---

[6]   Though Relators describe the flyer as being disseminated to "patients nationwide," the "flyer" does not exhibit any reliable indicia of being sent or received by anyone.

submission of false claims.

### b.  Relator Investigation — Employee and Beneficiary Interviews

The second prong of the Relator Investigation also highlights the Relators' lack of knowledge of facts or circumstances relating to the Defendants' alleged fraud.[7]  The alleged "interviews" of former Med-Care employees who worked during different periods of time than the Relators do not fill in the gaps during which the Relators allege no details, let alone knowledge, of the alleged scheme.  *See* Doc. 98 at ¶¶ 118-26.  Even so, one interview of a purported "former Med-Care employee" who worked from 2007 to 2013 provides information already included in the Relators' general allegations about the telemarketing practices at Med-Care, and otherwise adds nothing new.  *See id.* ¶ 118-23.  Moreover, all of the interviews are unattributed, devoid of any additional detail regarding the telemarketing practices or alleged fraud, and unsupported by new evidence of the submission or payment of false claims.  *See id.*

Moreover, the Complaint does not remedy the lack of personal knowledge of the original "examples" of specific claims culled together from unidentified Medicare beneficiaries.  Bumbury makes no claim that she was personally aware that Med-Care did not have written permission to contact the beneficiaries, but only alleges that she learned about "unsolicited" calls "from speaking to Medicare beneficiaries that she called on behalf of the Defendants."  *Id.* ¶ 82.  Relators Bernstein and Camuccio make the same conclusory allegations as Bumbury.  *See id.* ¶¶ 98; 112.

These allegations about false claims and firsthand knowledge based on interviews of

---

[7]  Even though the Complaint shortened the sweeping time frame of the alleged fraud from 2004 through present day, *see* Doc. 48. ¶ 1, to 2008 through present day, *see* Doc. 98. ¶ 1, most of the claims and allegations still do not correspond to the Relators' respective dates of employment.  None of the Relators worked at Med-Care or East End in 2008 or 2009 and, therefore, the Complaint cannot adequately plead any allegations based upon personal knowledge of the alleged fraud during that time.  Doc. 95 at 7 (noting the "absence of personal knowledge require[d] dismissal of all alleged violations [in the Second Amended Complaint] preceding" Bumbury's employment with East End on August 4, 2010).

Med-Care employees and Medicare beneficiaries are entirely specious.  Without identifying any claim submitted to the government for payment, or sufficient firsthand knowledge of billing practices, the Complaint comes nowhere close to the requisite pleading standard under Rule 9(b).

### C.  Each Cause of Action Must Be Dismissed Pursuant to Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is 'plausible on its face.'" *Keeler*, 2014 WL 2595592, at *8 (quoting *Iqbal*, 556 U.S. at 678).  Here, Bumbury's fourth attempt to state a claim fails to meet this standard.

### 1.      Count I Does Not State a Violation of Section 3729(a)(1)(A)

The Complaint does not provide sufficient facts to plausibly allege that false claims were "actually submitted to the federal government" and therefore fails to state a claim under Section 3729(a)(1)(A).  *Mastej*, 869 F. Supp. 2d at 1342.  This provision of the False Claims Act imposes liability only where a person "knowingly presents, or causes to be presented . . . a false or fraudulent claim for payment or approval."   31 U.S.C. § 3729(a)(1)(A).   To satisfy this requirement, a relator must "allege with . . . specificity if—or when—any actual improper claims were submitted to the Government."  *Clausen*, 290 F.3d at 1312 (finding relator's failure to do so was fatal to his complaint).   It is not enough to state "with particularity the circumstances comprising the elements of the alleged scheme to defraud" if a complaint fails "to meet the minimum pleading requirements for the *actual presentment of any false claims*."  *Clausen*, 290 F.3d at 1315; *Corsello*, 428 F.3d at 1014 (dismissing complaint for failing "to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government").

Relators fail to state a claim under Section 3729(a)(1)(A) because, as stated above, they have no firsthand knowledge of Defendants' alleged billing practices and rely exclusively on conclusory allegations.  In *Clausen*, the relator's failure to "identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented"

caused the complaint to fail.  290 F.3d at 1311.  In *Atkins*, the relator had no "firsthand knowledge of the defendants' submission of false claims," was not "responsible for filing and submitting the defendants' claims for reimbursement," and based his claims on the rumors he heard from staff and the records he observed.  470 F.3d at 1359.  Here, similarly, the Complaint does not sufficiently identify one claim submitted to the government.  Further, the Relators fail to provide any specific details, such as dates, persons involved, or amounts of claims, which were allegedly paid by the government.  This Court has recognized that such allegations suffer from "the same lack of specificity as those at issue in *Clausen* and its progeny."  Doc. 95 at 4-5.

### 2.     Count II Does Not State a Claim for Violation of Section 3729(a)(1)(B)

The Complaint does not establish "that the government in fact paid a false claim" and therefore fails to state a claim under 31 U.S.C. § 3729(a)(1)(B).  Under Section 3729(a)(1)(B), "a plaintiff must show that (1) the defendant[s] made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant[s'] false record or statement caused the government to actually pay a false claim, either to the defendant[s] [themselves], or to a third party."  *Id.*  This requires the relator [to] show that the government, in fact, paid a false claim."  *Mastej*, 869 F. Supp. 2d at 1345.

Because the Complaint fails to link the Defendants' allegedly "false statements to the government's decision to pay false claims," it fails to state a claim under Section 3729(a)(1)(B). In *Hopper*, sales representatives who worked for the defendant "assert[ed] that sales generated from [an illegal] marketing scheme caused the government to pay false claims through Medicaid."  *Hopper*, 588 F.3d at 1322.  As the Relators here, the sales representatives had no contact with their employer's billing department.  The Eleventh Circuit dismissed the complaint finding that it failed to establish that the defendants "intended for the government to rely on the substance of their off-label marketing campaign to decide to pay a claim."  *Id.* at 1330.

Here, too, Relators fail to link the substance of the telemarketing "scheme" to any specific allegations relating to any one Defendant's intent to get a false claim paid by the government.  The Complaint focuses almost entirely on the allegedly fraudulent business practices of Med-Care, while making no specific claims that these practices actually caused Medicare to pay false claims.  *See* Doc. 98 at ¶¶ 146-151.  As a result, the Complaint fails on this count for the same reasons as the Court previously ruled.

### 3. <u>Count III Fails to State a Claim for Violation of Section 3729(a)(1)(C)</u>

The Complaint does not sufficiently allege that Defendants conspired to defraud the government under 31 U.S.C. § 3729(a)(1)(C) because the Relators fail to identify an agreement or act attributable to any of the Defendants.  Section 3729(a)(1)(C) only "imposes liability on those who 'conspire[] to defraud the government by getting a false or fraudulent claim allowed or paid.'"  *Corsello*, 428 F.3d at 1014 (quoting 31 U.S.C. § 3729(a)(1)(3)).  Accordingly, a relator must show "(1) that the defendant conspired with one of more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim."  *Id.* (quoting *U.S. ex rel. Stinson v. Provident Life & Accident Ins. Co.*, 721 F. Supp. 1247, 1259 (S.D. Fla. 1989)).  A relator will not succeed if the complaint "fails to describe, in specific detail, an act that furthered the object of a conspiracy."  *Mastej*, 869 F. Supp. 2d at 1347.

The Complaint fails to adequately state a claim for relief under Section 3729(a)(1)(C) because it does not identify an underlying agreement or act between Defendants.  In fact, the Complaint dedicates only one portion of one paragraph to its allegations about the purported conspiracy between Defendants Daniel Porush, Steven Silverman, and Lawrence Silverman.  Doc. 98 at ¶ 116.  That allegation is based on two emails and a handwritten mark-up of expenses

from December 2010.  *See id.*, Ex. 10.  The remaining references to the alleged conspiracy merely state that each relator "has direct and personal knowledge that the Defendants have engaged in a conspiracy. . . ."  *See id.* ¶¶ 52-54.  These conclusory and unsupported allegations are insufficient to state a claim for conspiracy.

## V.    CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court reject, as jurisdictionally barred, any attempt to include Bernstein and Camuccio as plaintiffs to the Complaint, and furthermore dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure all claims set forth in the Complaint.

Respectfully submitted,

COUNSEL FOR DEFENDANTS

FOWLER WHITE BURNETT, P.A.
Espirito Santo Plaza, Fourteenth
Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile:  (305) 789-9201

By: s/Christopher E. Knight
    Christopher E. Knight
    Florida Bar No. 607363
    Email:cknight@fowler-white.com

Of Counsel:

Hal K. Litchford
Florida Bar No. 272485
Email: hlitchford@bakerdonelson.com
Baker, Donelson,
Sun Trust Center
200 South Orange Avenue
Post Office Box 1549
Orlando, FL 32802
Telephone:  (407) 422-6600
Telecopier:  (407) 841-0325

Robert E. Hauberg, Jr. (MSB No. 8958)
(Appearing Pro Hac Vice)
Post Office Box 14167
Jackson, Mississippi 39236
Telephone: (601) 351-2400
K Street, Suite 900
Washington, D.C. 20001
Telephone: (202) 508-3400
Email: rhauberg@bakerdonelson.com

Wayne F. Dennison
(Appearing Pro Hac Vice)
Email: wdennison@brownrudnick.com
Brown Rudnick, LLP
One Financial Center Boston, MA 02111
Telephone: (617) 856-8200
Facsimile:  (617) 856-8201

Susan H. Aprill
Florida Bar No. 346934
Email: saprill@fowler-white.com
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Ft. Lauderdale, FL 33394
Telephone:  (954) 377-8100
Facsimile:  (954) 377-8101

Michael J. Drahos
Florida Bar No. 617059
Email:mdrahos@fowler-white.com
Northbridge Center
515 North Flagler Drive, Suite 901
West Palm Beach, Florida 33401
Telephone: (561) 802-9044
Facsimile:  (561) 802-9976

Stephen A. Best
(Subject to Pro Hac Vice Admission)
Email: sbest@brownrudnick.com
Brown Rudnick, LLP
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile:  (617) 856-8201

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the persons identified in the Service List below.

s/Christopher E. Knight
Christopher E. Knight

## SERVICE LIST

Elisa Castroluga
Assistant U.S. Attorney
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
elisa.castrolugo@usdoj.gov

Erin Michelle Bengelle
Nicholson & Eastin, LLP
707 N.E. 3rd Avenue, Suite 301
Fort Lauderdale, FL 33304
erin@chicholsoneastin.com

Robert N. Nicholson
Nicholson & Eastin, LLP
707 N.E. 3rd Avenue, Suite 301
Fort Lauderdale, FL 33304
robert@nicholsoneastin.com

Parker D. Eastin
Nicholson & Eastin, LLP
707 N.E. 3rd Avenue, Suite 301
Fort Lauderdale, FL 33304
parker@nicholsoneastin.com

Robert E. Hauberg, Jr.
Baker, Donelson, et al.
4268 Interstate 55 North
Jackson, MS 39211
rhamberg@bakerdonelson.com

Hal K. Litchford
Baker, Donelson, et al.
Post Office Box 1549
Orlando, FL 32802
Hlitchford@bakerdoneslon.com

Stephen A. Best
Brown Rudnick, LLP
One Financial Center
Boston, MA 02111
sbest@brownrudnick.com

Wayne F. Dennison
Brown Rudnick, LLP
One Financial Center
Boston, MA 02111
wdennison@brownrudnick.com

Christopher Edson Knight
Fowler White Burnett, P.A.
1395 Brickell Avenue, Suite 1400
Miami, FL 33131-3302
cknight@fowler-white.com

Susan H. Aprill
Fowler White Burnett, P.A.
100 Southeast Third Avenue, # 2100
Fort. Lauderdale, FL 33394
sa@fowler-white.com

Michael J. Drahos
Fowler White Burnett, P.A.
515 N. Flagler Drive, Suite 2100
West Palm Beach, FL 33401
mdrahos@fowler-white.com

4822-0084-9949, v. 1