UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81634-CIV-ROSENBERG/HOPKINS

UNITED STATES OF AMERICA
*ex rel.* TIFFANY BUMBURY et al.,

Plaintiffs,

vs.

MED-CARE DIABETIC & MEDICAL
SUPPLIES, INC., et al.,

Defendants.
_____/



FILED BY _____ D.C.

MAR 09 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - WPB

## **ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL (DE 122)**

THIS CAUSE is before this Court upon an Order referring the instant motion to the undersigned United States Magistrate Judge for appropriate disposition (DE 131). Before the Court is Defendants' Motion to Disqualify Counsel, for Sanctions and Referral to the Florida Bar (DE 122), Nicholson & Eastin LLP's Response (DE 134), and Defendants' Reply (DE 152). The undersigned held an evidentiary hearing on Defendants' Motion on February 10, 2015 (DE 161) and on February 12, 2015 (DE 168). Thereafter, the Parties were permitted to file supplemental briefs, which they did on February 25, 2015 (DE 172, 173). Defendants' Motion is now ripe for this Court's review. For the reasons that follow, Defendants' Motion to Disqualify (DE 122) is **GRANTED**.

## **BACKGROUND**

This qui tam case was filed under seal in December 2010 pursuant to the False Claims Act. On November 12, 2013, the First Amended Complaint was unsealed, and summonses were

issued to all Defendants the next day. Defendants are accused of submitting false claims to Medicare beginning in 2008 that Defendants knew to be false or ineligible for reimbursement, or which were submitted in reckless disregard for the falsity of the claims. This case is maintained by three Relators, each of whom was employed by one or more Defendants at some point during the relevant time period. The United States has declined to intervene. The six Defendants who remain in this case are Med-Care Diabetic & Supplies, Inc., East End Associates, Inc., Daniel Porush, Lawrence Silverman, Jordan Shamah, and Steven Silverman. Med-Care and East End are the companies located in Boca Raton and New York, respectively, that are charged with the allegedly improper behavior. These two companies are providers of durable medical equipment ("DME") and accordingly are regulated under Medicare regulations. The four individual Defendants are each associated with one or both of the companies either through ownership or management positions.

## FINDINGS OF FACT

In fall of 2009, prior to this suit having been filed, Defendant Med-Care engaged the law firm of Broad and Cassel ("B&C") to provide legal advice concerning its compliance with Medicare regulations. More specifically, between September 2009 and October 2010, B&C rendered legal advice to Med-Care in the following areas:

- The solicitation of Medicare beneficiaries, including cold call prohibitions, internet marketing, and proof of patient authorization to be called by Med-Care;
- Lead generation, including third-party leads and anti-kickback regulations;

- A formal response to an October 13, 2010 letter from the Centers for Medicare and Medicaid Services ("CMS")[1] following a site inspection of Med-Care;
- Med-Care's use of fictitious names;
- Daniel Porush's criminal background, including the adequacy of Med-Care's disclosure to CMS of Mr. Porush's role within the company;
- The provision of non-Medicare covered items to Medicare beneficiaries; and
- Med-Care's corporate organization, including the division of profits among related entities and individuals.

The two lawyers associated with B&C with whom Med-Care primarily interacted are Lester J. Perling, who testified during the disqualification hearing, and Vanessa Reynolds. During the time B&C was retained by Med-Care, Parker Eastin, a current attorney for the Relators, was working at B&C as an associate in B&C's health law and white collar criminal defense group. While an attorney at B&C, Eastin had unrestricted access to Med-Care's hard copy and electronic files. Otherwise, Eastin was involved in at least two matters relating to B&C's representation of Med-Care. First, Eastin was asked to review regulatory changes to what is known as "Supplier Standard Eleven." This standard deals with the direct solicitation of Medicare beneficiaries through telemarketing and other means. Stemming from his review of Supplier Standard Eleven, Eastin was involved in a conference call with Mr. Perling and Defendants Daniel Porush and Steven Silverman. Given that this call occurred over four years ago, the specifics of what confidences, if any, were actually revealed during the call are unclear.

---

[1] CMS is a federal agency within the United States Department of Health and Human Services that administers the Medicare program and works in partnership with state governments to administer Medicaid.

Following the call, Eastin submitted a billing entry for 2.6 hours, dated September 3, 2010, which states:

> Conference with L. Perling regarding telemarketing issues; legal research and analysis regarding telemarketing issues and potential criminal implications; call with L. Perling and client regarding marketing and solicitation calls.

Eastin's next matter of involvement occurred in October of 2010, whereby he was involved in preparing Med-Care's response to the October 13 CMS letter referenced above. The CMS letter listed several ways in which CMS had, during a site visit, found Med-Care to be out of compliance with CMS regulations. Specifically, CMS requested that Med-Care update its CMS-855S enrollment application to include information regarding Mr. Porush's role with the company, and notified Med-Care that it was improperly operating under multiple fictitious names that were not registered with CMS. Eastin submitted a billing entry for his work related to the CMS letter on October 19, 2010. The entry shows that Eastin spent 1.7 hours to:

> Review audit letter and related records; conference call with L. Perling and client regarding response to audit; review supplier standards.

In addition to Eastin's entry regarding this matter, both Mr. Perling and Ms. Reynolds submitted billing entries reflecting conversations with Eastin relating to the CMS letter. These entries are dated October 19 and October 27, 2010. Mr. Perling's entry indicates that Defendants Porush and Silverman and Med-Care's office manager Ellen Weil participated in the October 19 conference call. Again, the exact discussions at this conference call cannot be known.

Although the extent of Eastin's particular knowledge of facts relating to Med-Care's operations is unclear, Defendants produced undated, hand-written notes Eastin took while working on one or both of these matters which reference a variety of topics, including, "855(s)," "fictitious names," "Christian Healthcare Network," and "Daniel Porush, 1998" (Def. Exh. E). The date, 1998, is likely a reference to when Mr. Porush pled guilty to offences which would

have prevented him from becoming an owner of Med-Care for a period of ten years. From these notes and Eastin's testimony, it is clear that, at a minimum, Eastin had knowledge concerning Mr. Porush's criminal history, and the fact that Med-Care was operating under multiple fictitious names, including "Christian Healthcare Network."

Eastin left B&C on October 29, 2010. Beginning on November 1, 2010, Eastin started working for Robert Nicholson. Like Eastin, Nicholson is a former associate at B&C, but his tenure ended before Med-Care engaged B&C. At some point after their association, Eastin and Nicholson formed the law firm of Nicholson & Eastin, LLP ("N&E").

Sometime in November 2010, Tiffany Bumbury, the initial Relator, approached Nicholson with the purpose of filing a qui tam action against her former employer, Defendant East End. Ms. Bumbury decided to engage Nicholson, and in December 2010, N&E filed this case under seal. Sometime between when Ms. Bumbury initially approached Nicholson and when the Complaint was filed, Eastin and Nicholson had a discussion relating to Eastin's prior involvement with Med-Care. According to Nicholson and Eastin, Nicholson asked Eastin whether he perceived his prior representation to be in conflict with representing Bumbury, to which Eastin stated that he did not believe there to be such a conflict. Regardless, Nicholson allegedly instructed Eastin to not disclose any fact he may have learned while working on Med-Care's behalf. Notwithstanding this instruction, no confidentiality barrier, in any real sense, was maintained. To the contrary, Eastin was fully and completely involved in all aspects of this case.

As stated above, the case was unsealed in November of 2013. This case is currently governed by the Third Amended Complaint, filed on July 24, 2014. On December 23, 2014, the Court dismissed one of the three pending counts and ordered Defendants to file an answer to the Third Amended Complaint by January 19, 2015 (DE 119). The remaining counts stem from the

Relators' contentions that they witnessed Defendants engaging in activities such as illegal telemarketing, providing illegal kickbacks, giving illegal payments for Medicare beneficiary referrals, and billing and shipping equipment with no prescription in violation of Medicare requirements.

On January 12, 2015, Med-Care's in-house attorney, Michael Ortenau, was assisting in preparing Defendants' Answer to the Realtors' Third Amended Complaint when he came across billing records that had been submitted to Med-Care from B&C which referenced Eastin's prior involvement. After realizing that an attorney who had performed work on Med-Care's behalf was now representing the Relators in this case, Defendants filed the instant Motion to Disqualify on January 16, 2015 (DE 122). In the Motion to Disqualify, Defendants assert that Eastin's prior and current representations are in conflict and that due to this conflict, Eastin has violated several rules of professional conduct, including Rules 4-1.9 and 4-1.16 of the Florida Rules of Professional Conduct. Given the conflict inherent in Eastin's former and current representation, Defendants assert that Eastin's conflict should be imputed to Nicholson and N&E pursuant to Rule 4-1.10, and that all N&E attorneys should be disqualified from this case.

## ANALYSIS

### TIMELINESS

N&E contends that Defendants' Motion should be denied because it was not timely submitted. According to N&E, Defendants have been on notice of Eastin's involvement in this case since their January 2014 receipt of the Amended Complaint, which lists Eastin's name in the signature block and footer. In response, Defendants contend that Eastin's limited representation of Med-Care while at B&C prevented Defendants from connecting Eastin with his prior representation. Instead, Defendants contend that they were not on notice of Eastin's prior

involvement with Med-Care until January 12, 2015, when Med-Care's attorney reviewed Med-Care's historic billing records and recognized Eastin's name. Given the circumstances, Defendants submit that their Motion was timely filed.

Because the Motion to Disqualify was filed within five days of when Defendants were on actual notice of Eastin's prior representation and before the deadline for filing an answer had passed, the Court finds the disqualification motion to be timely filed. *See, e.g., Kobarid Holding, S.A. v. Reizen*, 2005 WL 1694069, *7 (S.D. Fla. July 19, 2005) (affirming the finding of a magistrate judge that a "seven-month delay [in filing the motion to disqualify] when very little progress had been made in this action" did not constitute a waiver); *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion.") (citation omitted).

**MERITS**

"Motions to disqualify are governed by two sources of authority," the local rules of the court in which they appear, and federal common law. *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (applying the Georgia Rules of Professional Conduct in addition to federal common law). "If a district court bases its disqualification order on an allegation of an ethical violation, 'the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.'" *Id.* (citing *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997)). "Instead, '[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule.'" *Id.* Attorneys in the Southern District of Florida

are governed in their professional conduct by the Rules Regulating the Florida Bar. *See* S.D. Fla. Local Rule 11.1(C).

The party moving to disqualify former counsel on the basis of conflict of interest bears the burden of proving the grounds for disqualification. *See Duncan v. Merrill Lynch, Pierce, Fenner, & Smith*, 646 F.2d 1020, 1028 (5th Cir. June 1, 1981).[2] "In a disqualification case, the focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations." *Duncan*, 646 F.2d at 1029. For guidance on this issue, the Court has, *inter alia*, reviewed *Freund v. Butterworth*, 165 F.3d 839 (11th Cir. 1999).

*Freund* originated as a state criminal case that ultimately reached the Eleventh Circuit pursuant to 28 U.S.C. § 2254. *See id.* at 841. In the defendant's § 2254 motion, he argued that he was denied effective assistance of counsel insofar as his counsel at trial and on appeal "labored under significant conflicts of interest that stemmed primarily from their prior representation of [the defendant's] non-testifying, separately-tried co-defendant . . . ." *See id.* The issue before the Eleventh Circuit was whether an actual conflict of interest existed. *See id.* at 858-59. The court explained that, in cases where the alleged conflict stems from successive, as opposed to simultaneous, representation, the petitioner seeking to show a conflict must show, at a minimum, "that *either* (1) counsel's earlier representation of the witness was substantially and particularly related to counsel's later representation of [petitioner], *or*, (2) counsel actually learned particular confidential information during the prior representation . . . that was relevant to [petitioner's] later case." *See id.* at 859 (citing *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987), *cert. denied*, 484 U.S. 863 (1987)). In other words, a conflict exists if either the former and current

---

[2] All decisions of the former Fifth Circuit handed down prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

representations are substantially related or the attorney actually learned information in the prior representation that is relevant to the current representation. *See id.* If the court finds that "the present and prior representations are 'substantially related,' the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *See id.* (citing *Duncan*, 646 F.2d at 1028). Ultimately, the *Freund* court determined that the successive representations did not create an actual conflict of interest because the two representations were neither substantially related nor did the movant elicit any independent proof of confidential information. *See id.* at 864, 869.

N&E suggests that *Freund* is distinguishable from the instant facts insofar as the conflict at issue there arose in a criminal context. Nevertheless, the *Freund* court itself recognized that the underlying rule as to substantial relatedness "has its origin in pretrial proceedings concerning motions to disqualify lawyers, as opposed to post-conviction proceedings concerning Sixth Amendment violations." *See Freund*, 165 F.3d at 859. "[T]he rationale behind the rule applies to both types of proceedings." *Id.*

Although *Freund* includes a discussion regarding whether the successive representations were "substantially related" under its facts, *see* 165 F.3d at 862-64, *Duncan*, a case relied on in *Freund*, provides a better framework for analyzing whether two matters can generally be considered "substantially related." *See Duncan*, 646 F.2d at 1027-32. In *Duncan*, the plaintiff filed a complaint against the defendant alleging securities fraud. *See id.* at 1021. Before responding to the complaint, the defendant filed a motion to disqualify the plaintiff's firm, contending that the firm "had previously represented it in a number of cases that bore a 'substantial relationship' to the issues raised in [the instant case]." *See id.* at 1022. As evidence of the substantial relatedness, the defendant filed an affidavit listing the general matters for

which the firm has previously provided legal advice to the defendant. *See id.* One issue before the court was whether this evidence was sufficient for the defendant to meet its burden to show that the two matters were substantially related. *See id.* at 1028-29.

In due course, the *Duncan* court found that the defendant had not provided enough evidence to show that the current representation was substantially related to the prior representation so as to necessitate disqualification. *See id.* at 1029. In so holding, the court noted that the party seeking disqualification cannot "[m]erely point[] to a superficial resemblance between the present and prior representations." *See id.* Instead, the movant must "delineate with specificity the subject matters, issues, and causes of action presented in the former representation" so that the court can determine whether the two matters are substantially related. *See id.* "The party seeking disqualification is not required, however, to point to specific confidences revealed to his former attorney that are relevant to the pending case." *Id.* at 1028.

Subsequent cases have provided further guidance in determining whether two matters are substantially related. In *Morgan Stanley v. Soloman*, 2009 WL 413519, *1 (S.D. Fla. Feb. 19, 2009) (Marra, J.), the plaintiff sought a preliminary injunction to prevent the defendant and his law firm from representing a client who was involved in securities arbitration with the plaintiff. According to the plaintiff, the defendant had previously represented the plaintiff in securities litigation cases involving arbitration and class action claims, and thus to now litigate against the plaintiff in that same type of case constituted a conflict of interest in violation of Rule 4-1.9 of the Florida Rules of Professional Conduct. *See id.* at *1-2. In comparing the prior and current representations, the court found that although "the claims [in the prior and current representations] are the same type," the facts "do not demonstrate that the cases are 'substantially related.'" *See id.* at *3. In reaching this conclusion, the court distinguished two cases: *Health*

*Care & Retirement Corp. of Am., Inc. v. Bradley*, 961 So. 2d 1071 (Fla. Dist. Ct. App. 2007) and *Sears, Roebuck & Co. v. Stansbury*, 374 So. 2d 1051 (Fla. Dist. Ct. App. 1979). *See id.* at *4. The reason for the comparison was to show the distinction between when two matters rely on the same legal theories but involve different facts, and when two matters involve the same facts. *See id.* In the former scenario, the two matters are not generally considered to be substantially related, but in the latter, they are. *See id.*

Other considerations for determining whether matters are substantially related for the purposes of a disqualification motion include if the two matters involve the same subject matter, the same transactions, the same events, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. *See, e.g.*, Rule Regulating Fla. Bar 4-1.9 cmt. ("Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client."); *United States v. Hernandez*, 2013 WL 5313311, *3 (S.D. Fla. Sept. 20, 2013) ("[S]o long as the first matter could reasonably be understood as important to the issues involved in the present matter, the matters are substantially related as required under Rule 4–1.9(a)."); *In re Skyway Commc'ns Holding Corp.*, 415 B.R. 859, 869 (Bankr. M.D. Fla. 2009) (finding two representations to be substantially related where both "involve the same underlying facts or allegedly fraudulent scheme, and that a reasonable person would understand that the important issues in both cases are related"); *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992) ("[R]epresentations are substantially similar if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.").

With this guiding framework in place, the Court considers Rule 4-1.9 of the Florida Rules of Professional Conduct, the primary rule cited by Defendants in support of their Motion to Disqualify. As stated above, Defendants also assert that Eastin violated Rule 4-1.16. This rule states that a lawyer "shall not represent a client . . . if: (1) the representation will result in a violation of the Rules of Professional Conduct or law. . . ." *See* Rule Regulating Fla. Bar 4-1.16. Thus, a violation of Rule 4-1.16 is automatically implicated if the Court finds that an attorney violates Rule 4-1.9. Rule 4-1.9 (Conflict of Interest; Former Client) states:

> A lawyer who has formerly represented a client in a matter must not afterwards:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Although the rule provides three ways in which a conflict can be created and each contains several distinct elements, the primary issue before the Court is whether Eastin's prior representation of Defendant Med-Care is substantially related to the instant matter.[3] Based on a review of all the evidence, the Court finds that the two matters are substantially related.

B&C's attorneys provided a broad range of Medicare regulation advice to Med-Care during the time Eastin was employed by B&C, including, as stated above, advice concerning the solicitation of Medicare beneficiaries, lead generation, anti-kickback regulations, Med-Care's use of fictitious names, Mr. Porush's involvement in Med-Care, the provision of non-Medicare

---

[3] Despite Eastin's attempts to explain how Med-Care was B&C's client and not his, it is patently clear that by performing work on Med-Care's behalf and billing Med-Care for that work, Eastin is considered to have formerly represented Med-Care in a matter, however limited this representation might have been. Otherwise, the Parties do not dispute that the Realtors' interests are materially adverse to Med-Care's interests.

covered items to Medicare beneficiaries, and Med-Care's corporate organization.[4] Now, the Relators are suing Med-Care for its failure to comply with the regulations about which it sought advice from B&C. More specifically, the Third Amended Complaint contains allegations directly relating to information Eastin was admittedly privy to while representing Med-Care, including Med-Care's telemarketing practices, that Med-Care was improperly operating under fictitious names, and that Med-Care had, at one point, failed to disclose Mr. Porush's role within the company. To the extent that Eastin provided advice concerning compliance with Medicare regulations, the current matter could involve Eastin attacking work that he performed for Med-Care. *See* Rule Regulating Fla. Bar 4-1.9 cmt.

In addition to those subjects which Eastin has admitted to being involved with, the governing complaint contains several other allegations that are directly related to multiple subjects that other B&C attorneys were involved with while representing Med-Care, including the provision of non-Medicare covered items to Medicare beneficiaries, lead generation, corporate organizational matters including profit sharing, and improper internet marketing practices. That the time periods in which Eastin and B&C represented Med-Care and the time period in which many of the alleged illegal acts occurred overlap provides additional support for the conclusion that the two representations are substantially related. Not only do both representations involve some of the same legal theories and parties, but both also involve many of the same facts; at the same time Eastin was sitting in on conference calls with Med-Care and Defendants Porush and Silverman to discuss how to comply with Medicare regulations, these

---

[4] This list of issues is sufficiently specific to allow the Court to compare the prior representation with the current representation. *Cf. Duncan*, 646 F.2d at 1028-29 (the former client's general statements concerning the matters for which the party to be disqualified had previously provided representation were inadequate to show that the two matters were substantially related).

Defendants were, according to the allegations in the governing complaint, engaged in a scheme to violate these regulations.

In sum, Med-Care has "delineate[d] with specificity the subject matters [and] issues . . . presented in the former representation" and a comparison of those subject matters and issues to those presented in the instant case clearly shows that the former and current representations are substantially related. *See Duncan*, 646 F.2d at 1029. Indeed, it appears that B&C provided advice precisely concerning how to avoid allegations like those that Med-Care is now facing. *Cf. Hermann*, 199 Fed. App'x at 756 (finding a substantial relationship when the former representation involved determining whether the client was complying with employment and wage and hour law and the current representation alleges that the client failed to comply with those laws). Because Defendants have shown that the two matters are substantially related, the Court *irrebuttably* presumes that relevant confidential information was disclosed to Eastin during the former period of representation. *See Freund*, 165 F.3d at 859.

In addition to the irrebutable presumption of confidences, the Court also finds that Eastin was actually privy to some confidential information by virtue of his access to Med-Care's files and participation in two conference calls in which Med-Care and its principles were present. *Cf. Hermann v. Gutterguard, Inc.*, 2005 WL 6076877, *1 (N.D. Ga. Dec. 21, 2005) *aff'd*, 199 F. App'x 745, *11 (11th Cir. 2006) (finding that an attorney who had sat in on a meeting where confidential information was likely shared actually obtained protected, material information because, "inasmuch as the subject matter being handled by [the former firm] is so germane to the litigation now being prosecuted by [the conflicted attorney] against these same clients, the Court infers materiality"). Eastin contends that he cannot remember the substance of these conversations and thus the Court cannot find that he has actual knowledge of confidential

information. Indeed, Eastin testified that he did not remember hearing the name "Christian Healthcare Network" while he worked at B&C, yet his handwritten notes from that time reference same. Merely contending that he has no recollection of receiving any information is insufficient to oppose evidence to the contrary. *See, e.g., Gaton v. Health Coal., Inc.*, 745 So. 2d 510, 511-12 (Fla. Dist. Ct. App. 1999) ("A failure to remember . . . does not rebut clearly set-out assertions . . . .").

N&E argues that even if Eastin obtained confidences, Med-Care has waived the confidential nature of these communications by asserting good faith and reliance on counsel affirmative defenses, and by discussing the communications in open court. In making this argument, N&E conflates the protections afforded by the attorney-client privilege and the prohibition against attorneys operating under conflicts of interest. Maintaining the confidentiality of information and protecting client confidences is not the only justification for disqualification; instead, the rule also serves to maintain the integrity of the legal field and encourage clients to speak freely with their counsel. *See Duncan*, 646 F.2d at 1027. Because the doctrines of "attorney-client privilege" and "conflict of interests" "serve different purposes and are not co-extant, it cannot be inferred that a client waives his attorney's conflict of interest solely because he had waived his attorney-client privilege." *See Skyway*, 415 B.R. at 868.

In any event, it cannot be said that by merely asserting good faith and reliance on counsel defenses at this stage in the proceedings and describing the types of issues that were discussed between Med-Care and B&C, Med-Care has waived the privilege in entirety. *See Brookings v. State*, 495 So. 2d 135, 139 (Fla. 1986) ("[T]he mere fact that a witness-client testifies to facts which were the subject of consultation with counsel is no waiver of the privilege. It is the communication with counsel which is privileged, not the facts."); *see also Hermann*, 199 F.

App'x at 756 (finding that confidential information had not lost its protection where an attorney listed the type of work she had performed but did not reveal any of the information actually gathered when performing that work).

Given that the matters are substantially related, the Court finds that Eastin has been pursuing this case under an actual conflict of interest, in violation of Rule 4-1.9(a) of the Florida Rules of Professional Conduct.

**Remedy**

"It is well-settled that disqualification is not mandatory even after a finding that a law firm has violated a conflict of interest rule." *See Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, 2008 WL 1994857, *1 (S.D. Fla. May 6, 2008). Instead, disqualification of a party's chosen counsel is a drastic remedy that should be resorted to sparingly. *See Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n. 4 (11th Cir. 1982). Nevertheless, notable justifications for imposing such a harsh remedy in a context like this include: (1) to prevent the unfairness that would occur should an attorney be permitted to reveal confidences of a former client to the client's adversary; (2) to ensure that the free flow of communication between a client and an attorney is not frustrated; and (3) to preserve the integrity of the judicial system and perception of attorneys generally. *See Duncan*, 646 F.2d at 1027. Generally, in deciding whether disqualification is appropriate, the court must be "conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely choose counsel." *See Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

N&E suggests that the Court should determine whether disqualification is necessary by applying the factors discussed in *Great American*, which include: "the nature of the ethical

violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical devise or a means of harassment." *See Great American*, 2008 WL 1994857, at *2. Applying the factors to the instant facts leads the Court to conclude that disqualification is necessary.

A basic review of the facts shows that within two months of representing Defendant Med-Care by providing advice on compliance with Medicare telemarketing and disclosure regulations, Eastin began working on a case (without first performing *any* meaningful conflict analysis) to sue Med-Care based, in part, on its failure to comply with those regulations. This ethical violation only serves to perpetuate the perception that lawyers elevate their self-interests above those of their clients. This is no small factor.

As to the prejudice to Med-Care, N&E argues that Med-Care is not prejudiced because all information Eastin received while at B&C is a matter of public record or would have been uncovered in this case regardless of his involvement at B&C. This argument ignores the fact that in applying the irrebutable presumption, the Court has foreclosed the necessity of Defendants having to provide a list of specific confidences Med-Care shared with B&C and Eastin. The comment to Rule 4-1.9 of the Florida Rules of Professional Conduct clarifies this distinction. The comment states, in part:

> A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Rule Regulating Fla. Bar 4-1.9 cmt. Without knowing exactly what confidential information was exchanged, it is impossible to determine whether every piece of confidential information Eastin

was privy to has become generally known. In other words, once the presumption has been invoked, it is irrelevant what the actual confidences were. Thus, whether those confidences have since been revealed is not dispositive.

As to the prejudice to the Relators, the Relators will indeed be temporarily prejudiced insofar as they will be required to seek out new counsel, and the case will consequently be delayed. Notwithstanding this temporary prejudice, finding qualified attorneys to sign on to a case where a substantial portion of the work has already been performed would seem to be anything but impossible. While Defendants might gain a tactical advantage insofar as the Relators will be required to obtain new counsel, this advantage will be temporary. Accordingly, prejudice to the Relators and temporary tactical advantage to Defendants are not dispositive.

N&E contends that even if Eastin is disqualified from representing the Relators in this matter, Nicholson and other N&E attorneys should not also be disqualified. In support of this argument, N&E cites rule 4-1.10(b) of the Florida Rules of Professional Conduct, which governs in circumstances where a lawyer acquired confidences while working at a prior firm and then moves to a new firm. This rule states:

> **(b) Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6[5] and 4-1.9(b) and (c) that is material to the matter.

According to N&E, whereas a presumption of confidential information can require disqualification under Rule 1.9, rule 1.10 requires that the conflicted lawyer *actually* acquired

---

[5] Rule 4-1.6 provides that a "lawyer must not reveal information relating to the representation of a client" unless either the client consents or one of several exceptions, all of which are irrelevant in this case, applies.

Page 18 of 20

protected information before the conflict can be imputed to the attorney's new firm. In support of this interpretation, N&E cites the comment to the rule, which states: "Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of relevant information protected by rule 4-1.6 and 4-1.9(b) and (c)." *See* Rule Regulating Fla. Bar 4-1.10 cmt. N&E asserts that even if the Court finds that the matters are substantially related, there is only a presumption of shared confidences, rather than evidence of actual shared confidences. Without such evidence, N&E claims, the conflict cannot be imputed to the entire firm.

While the Court has indeed relied primarily on the presumption that attaches because the matters are substantially related, the Court has also determined that Eastin actually obtained client confidences by virtue of his access to Med-Care's files and his participation, active or otherwise, in two conference calls with Med-Care's representatives. Given that Eastin actually acquired protected information, N&E was prohibited from representing the Relators in this matter and its having done so constitutes a violation of Rule 4-1.10(b). That N&E undertook the representation in spite of the conflict and with no meaningful conflict check requires disqualification of the entire firm.

## CONCLUSION

Based on the foregoing, it is **HEREBY ORDERED AND ADJUDGED** that Defendants' Motion to Disqualify (DE 122) be **GRANTED**, and the Realtors' counsel, Nicholson & Eastin, LLP, is disqualified from representing the Relators in this matter.

**DONE AND ORDERED** in chambers this 9th day of March, 2015, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

JAMES M. HOPKINS,
UNITED STATES MAGISTRATE JUDGE